IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HENRY C. EVANS, III, | ) | CASE NO. 1:16 CV 378 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

Before me[1] is an action by Henry C. Evans, III under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying his application for supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and procedural[6] orders, the parties have

---

[1] ECF # 13. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 9.

[4] ECF # 10.

[5] ECF # 5.

[6] ECF # 11.

briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

For the reasons set forth below, the decision of the Commissioner will be affirmed as supported by substantial evidence.

## Facts

**A.     Background facts and decision of the Administrative Law Judge ("ALJ")**

Evans who was 42 years old at the time of the administrative hearing,[11] has an eleventh grade education.[12] He was in special education classes from fourth grade through eleventh grade.[13] His past relevant work history includes work as a valet driver and tow motor operator.[14]

The ALJ, whose decision became the final decision of the Commissioner, found that Evans had the following severe impairments: borderline intellectual functioning, personality

---

[7] ECF # 19 (Commissioner's brief); ECF # 14 at 3 (Evans's brief).

[8] ECF # 19-1 (Commissioner's charts); ECF # 14-1 (Evans's charts).

[9] ECF # 14 at 1 (Evans's fact sheet).

[10] ECF # 22.

[11] ECF # 14 at1.

[12] ECF #10, Transcript ("Tr.") at 48.

[13] *Id*.

[14] *Id*. at 17.

disorder, amputation of fingertip, left anterior cruciate ligament (ACL) tear and repair, decreased vision in the right eye and low back pain (20 CFR 416.920(c)).[15]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Evans's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except: He can occasionally use gross manipulation of the non-dominant left hand (due to weak grasp) and all other uses of dominant and non-dominant hands are unlimited. He should avoid work at unprotected heights due to visual limitations. He can understand, remember, and carry out instructions consistent with performing work at the SP1 through SVP3 levels. He can maintain concentration, persistence or pace for work that is commensurate with work performed at the SPV 1 through SPV 3 levels. He can interact with the general public, co-workers and supervisors to speak, signal take instructions and carry out instructions. He is limited to routine type changes at work without strict mechanized production demands or standards.[16]

Based on that residual functional capacity, the ALJ found Evans capable of his past relevant work as a valet and tow motor operator and, therefore, not under a disability.[17]

**B.     Issues on judicial review**

Evans asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Evans presents the following issues for judicial review:

---

[15] *Id*. at 10.

[16] *Id.* at 13.

[17] *Id.* at 17.

-3-

- Whether the ALJ's Step 3 finding is contrary to law and/or not based on substantial evidence.[18]

## Analysis

**A.     Standards of review**

*1.     Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[19]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner

---

[18] ECF # 14 at 3.

[19] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

survives "a directed verdict" and wins.[20] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[21]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**B.    Application of standard**

Evans essentially argues that the ALJ erred by not ordering another consultative IQ examination when that was requested by the claimant's counsel and was purportedly required by relevant sections of the HALLEX, and that this error was compounded when the ALJ impermissibly evaluated raw medical data to express a medical opinion.

As I recently stated in *Sito v. Commissioner of Social Security*,[22] the Hearings, Appeals and Litigation Law Manual ("HALLEX") is a "source of guiding principles, procedural guidance and information" to the ALJs and agency staff.[23] As such, it must be understood that while "HALLEX procedures are binding on the Social Security

---

[20] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[21] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[22] *Sito v. Comm'r of Soc. Sec.*, No. 3:15 CV 2551, 2017 WL 168496 (N.D. Ohio Jan. 17, 2017).

[23] *Sito*, 2017 WL 168496, at * 7 (citing *Bowie v. Comm'r of Social Security,* 539 F.3d 395, 397 (6th Cir. 2008)(internal quotation omitted)); *see also, Kostyo v. Colvin*, No. 3:14 CV 1238, 2015 WL 4067260, at * 7 fn.3 (N.D. Ohio July 2, 2015).

Administration, they are not binding on courts reviewing the administration's proceedings."[24] Therefore, as is more fully detailed in *Sito*, any "attempt to ground a reversible due process violation solely on the Commissioner's purported lack of adherence to some provision of HALLEX must necessarily fail."[25]

In that regard, Evans argues that the prejudice here was in not following a HALLEX provision that allegedly directs an ALJ to order a new consultative IQ examination after a claimant has been determined to have not "put forth his best effort" in taking the original IQ examination.[26] He also contends that the same provision of HALLEX required that ALJ to inform him prior to his original IQ test that any failure to put forth his best effort would be used against him.[27]

The Commissioner observes first that the HALLEX section cited by Evans was I-2-524, which was last revised in 1994, and is now most closely analogous to section I-2-5-24,

---

[24] *Kostyo*, 2015 WL 4067260, at *7 (internal quotation and citation omitted). I observe in this regard, as is more fully addressed in *Sito*, that the Sixth Circuit has not directly addressed the question of whether a failure to follow HALLEX procedures constitutes reversible error, and that the Ninth and Fifth Circuits have reached different results on that matter. *See, Sito*, 2017 WL 168496, at * 7 fn. 89. Given this split in the circuits, I concluded that the analysis by Magistrate Judge White in *Kostyo*, and the district court's decision *Caudill v. Astrue*, No. CIV.A. 09-70-GWU, 2010 WL 148806 (E.D. Ky. Jan. 14, 2010), together with the *dicta* in *Bowie*, cited above, was persuasive that "the mere failure to follow specific procedures in the HALLEX manual itself is not grounds for reversal absent a convincing showing of prejudice to the plaintiff." *Sito*, 2017 WL 168496, at *7 fn. 90 (internal citation omitted).

[25] *Sito*, 2017 WL 168496 at *7.

[26] ECF # 14 at 5.

[27] *Id*. at 3-5.

which was last updated in 2015.[28] Further, as the Commissioner notes, and the plain text of the provision states, this section applies when a claimant "does not attend or refuses to undergo a consultative examination,"[29] and not in a situation, as here, where the issue is any failure to put forth best efforts in a consultative examination that the claimant actually underwent.[30]

Moreover, as the Commissioner points out, despite being represented by counsel from the inception of this case in 2012, Evans himself could have obtained any additional IQ testing himself, once he was notified by a claims reviewer that his best effort was lacking in the original test.[31] It is the claimant who bears the burden of providing the evidence that his is disabled, and of the degree of severity of that disability.[32]

To that point, Evans asserts that it is the ALJ who has a duty to fully and fairly develop the record, and that the ALJ's decision here to decline to order IQ additional testing was a breach of that duty.

The reason given by the ALJ for not requesting an additional IQ examination was that it was not needed, in that "there is sufficient evidence in the record upon which to render a decision, including the psychological diagnoses rendered by Dr. Konieczny that the claimant

---

[28] *See*, 1992 WL 601810.

[29] *Id*.

[30] ECF # 19 at 6.

[31] *See*, ECF # 14 at 5 (citing record).

[32] *See, Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

has an Axis II diagnosis of malingering."[33] Dr. Konieczny further noted that Evans "appeared to exhibit minimal effort and appeared to intentionally offer wrong answers to questions. As such, it is likely that the obtained test results are not valid. Given his apparent educational and vocational history, it is likely that his true level of intellectual functioning lies within the borderline range."[34]

The ALJ gave great weight to this opinion.[35] In addition, he gave some weight to the opinions of two state agency reviewing physicians who found that Evans had only moderate difficulties with activities of daily living, maintaining social functioning and in maintaining concentration, persistence and pace.[36] Further, the ALJ herself found that although Evans had assistance from his mother and girlfriend in performing some of the tasks of daily living, this reflected a choice by Evans, not any inability.[37] Finally, the ALJ noted that Evans had a score of 86 - low average - on a 2007 General Ability Measure for Adults (GAMA) test conducted while he was incarcerated,[38] and had previously worked at a semi-skilled level as a tow motor operator.[39]

---

[33] Tr. at 8.

[34] *Id.* at 16.

[35] *Id.*

[36] *Id.* at 16-17.

[37] *Id.* at 11.

[38] *Id.* at 15.

[39] *Id.* at 14.

As the Commissioner observes, there is no medical opinion evidence stating that Evans has greater limitations than those set forth in the RFC.[40] Instead, Dr. Konieczny's opinion - which concluded by assigning Evans a GAF score of 52, indicative of moderate limitations[41] - itself provides substantial evidence for the RFC and the ultimate finding of no disability. There is no indication that the record was insufficiently developed to render a final decision on the issue of disability. In this regard, I also find no indication that the ALJ impermissibly "played doctor" by herself interpreting raw medical data and fashioning a medical opinion.

## Conclusion

For the reasons stated, I find that the decision of the Commissioner denying the application of Henry C. Evans III for disability benefits is supported by substantial evidence, and is hereby affirmed.

IT IS SO ORDERED.

Dated: March 28, 2017                                s/ William H. Baughman, Jr.
                                                    United States Magistrate Judge

---

[40] ECF # 19 at 12.

[41] Tr. at 16.